## THEODORA HIGUERA DE SANCHEZ v. OWEN McMAHON, AND PATRICK McMAHON.

STATEMENT FOR NEW TRIAL—INSUFFICIENCY OF EVIDENCE.—Where a statement on motion for a new trial fails to specify wherein the evidence is insufficient to justify the decision, such insufficiency as a ground of the motion will be disregarded.

IDEM—SPECIFICATION OF ERRORS.—When errors of law occurring at the trial are relied upon as errors on appeal, the particular errors must be pointed out by counsel; otherwise they will be disregarded, unless they plainly appear from the transcript on appeal.

ERROR—WHAT MATERIAL.—During the trial, by the Court without a jury, of an action to set aside a sale of lands to the defendants, on the grounds of fraud and gross inadequacy of the purchase price, the defendants were misled by an announcement from the bench concerning the sufficiency of the defendants' evidence on the latter point, whereby they were induced to omit the further introduction of evidence they had at command, which was pertinent to establish more fully the adequacy of the purchase price, the Court, by its decision, set aside the sale, but filed no findings of fact or opinion, and no exceptions were taken for want of findings: *Held*, that this furnished no ground for reversal on appeal, because the decision does not affirmatively appear to have been founded, in whole or in part, on said alleged inadequacy.

IDEM.—In such case, where a party wishes to put on record, for purposes of review, the decision of the Court on a matter of fact, the only mode is to request that written findings be filed, and on a failure or refusal to do so, to except for want

of findings. Such decision by the Court on a matter of fact cannot be established by affidavit on motion for new trial.

FRAUDULENT SALE—REFUNDING PURCHASE MONEY.—If a sale of lands, made under a power of attorney procured through fraud, be set aside as fraudulent and void *ab initio,* the fraudulent vendee is not entitled to a decree against the vendor for restitution of a part of the purchase money paid to the attorney who was privy to the fraud.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The motion for a new trial was denied by the Court below, and the defendants appealed from the order denying the same, and from the judgment.

The other facts are stated in the opinion of the Court.

*Patterson, Wallace & Stow,* for Appellants.

Appellants paid down, on the execution of the contract sought to be set aside, two thousand dollars. The decree does not provide for the repayment of any portion of that sum. This was error. When an agreement is sought to be rescinded on any equitable ground, " the equity is, to have the entire transaction rescinded, and the parties replaced *in statu quo."* (*Hanson* v. *Keating,* 4 Hare, 1–6; *Byne* v. *Vivian,* 5 Ves. 604; *Harding* v. *Handy,* 11 Wheat. 103; *Daniel* v. *Mitchell,* 1 Story, 173; *Dower* v. *Fortner,* 5 Port. 9; *Brogden* v. *Walker,* 2 Harr. & J. 285; *Waters* v. *Leman,* 4 Hamm. 229; *Lowry* v. *Cox,* 2 Dana, 469; *White* v. *Trotter,* 14 S. & M. 30; *Bruen* v. *Hone,* 2 Barb., S. C., 586; *Dogget* v. *Emmerson,* 1 Wood & M. 195; *Shaeffer* v. *Slade,* 7 Black. 178; *Mill* v. *Hill,* 3 House L. Cases, 838.)

Mere inadequacy of price, if the bargain is fair, is no ground of relief. (9 Pick. 231.) Inadequacy of consideration is no ground to set aside a contract. (*Western* v. *Russel,* 3 Ves. & B. 187; *Adams* v. *Weaver,* 1 Brown C. C. 567; *Collins* v. *Brown,* 1 Cox, 428; *Jackson* v. *Ashton,* 11 Pet. 229; *Griffith* v. *Spartly,* 2 Bro. C. C.; *Lord Lesley* v. *Rhodes,* 2 Sim. & Stu. 49; *Osgood* v. *Franklin,* 2 Johns. Ch. 23; *Seymour* v. *Delancy,* 3 Cow. 516; *Erwin* v. *Parhours,* 12 How. U. S. 197.)

*J. B. Harmon*, and *C. A. Johnson*, for Respondent.

This is a case of actual fraud; and adequacy or inadequacy of consideration, or capacity or incapacity of plaintiff, are immaterial matters. (*McArtee* v. *Engart*, 13 Ill. 242; 3 Lead. Cases in Equity, 137, 138.)

If the facts do not show actual fraud, they at least show undue influence—advantage taken of the ignorance and necessities of plaintiff; and this suffices to sustain the action. (3 Lead. Cases in Eq. 94, 120, 135, 138; 1 Lead. Cases in Eq. 274–592; 1 Story Eq., Secs. 235, 236, 239, 244, 246; *Taylor* v. *Taylor*, 8 How. 183; *Wheeler* v. *Smith*, 9 How. 55; *Brice* v. *Brice*, 5 Barb. 533; 7 Beav. 551; 5 Blackf. 509; *Purcell* v. *M'Namara*, 14 Ves. 111.)

By the Court, CROCKETT, J.:

This is a suit in equity to set aside a conveyance from the plaintiff to the defendants of valuable real estate, known as the "Rancho San Pedro," situate in San Mateo County.

It appears that the plaintiff is a native Mexican woman, forty-seven years old, unable to read or write, or to speak any language except the Spanish, and is the widow of Francisco Sanchez, deceased, and the mother of nine children. It further appears that her husband, in his lifetime, conveyed this ranch to three trustees, on the following trusts, to wit: first — that they would allow her, during her natural lifetime, to receive for her own use, the rents, income, and profits from the entire ranch; second—that she should have the right to dispose absolutely of one half the ranch either by deed or will, and the trustees were to execute the necessary conveyances to carry her dispositions into effect; third —that on her death, the other one half of the ranch should be conveyed by the trustees to the children of the marriage, share and share alike.

It further appears that in February, 1864, the plaintiff leased the entire ranch, less three hundred and twenty acres,

to one Seavers, for five years, at an annual rent of five thousand dollars in gold coin, and Seavers is now in possession under the lease. It also appears that in August, 1864, the plaintiff and her son Pedro Sanchez entered into a written contract with the defendants, whereby they agreed to sell to the defendants six hundred acres from off the northern portion of the ranch for the sum of nine thousand dollars in gold coin, and agreed to procure to be made to the defendants a valid title in fee to said six hundred acres. It was also proved that in October, 1863, the plaintiff and one Luis Sanchez made a mortgage to one of the defendants on the entire ranch to secure the payment of four thousand two hundred and twenty-seven dollars in gold coin, in two years, with interest at the rate of one and one half per cent per month, which mortgage remained in force.

It further appears that in April, 1865, the plaintiff made a power of attorney to her son Pedro Sanchez, whereby, amongst other things, she empowered him to manage and control said rancho and " to make to and with Owen McMahon (who is one of the defendants) any and all contracts or agreements to grant, bargain, sell, or incumber the same, in whole or in part, to him and his heirs and assigns, and said contracts and agreements to execute and carry out on such terms as he may deem proper; and also to execute and carry out and settle any and all contracts or agreements which I and my said attorney, or myself individually, may have heretofore made with any person or persons touching or affecting said rancho or any part thereof; to assign and transfer any contract or agreement which I may have with any one touching said rancho; to make, execute, acknowledge, and deliver any and all deeds, conveyances, agreements, contracts, demands, assignments, transfers, and other instruments, under seal or otherwise, which he may deem proper." To these are added a full power of substitution and revocation.

Under this power of attorney the said Pedro Sanchez, in the name and on behalf of the plaintiff, on the 5th of May,

1865, entered into a written contract with the defendant, Owen McMahon, by which the plaintiff agreed to sell and convey to him all her right, title, and interest in and to the entire ranch for the sum of twenty-four thousand dollars in gold coin, of which two thousand dollars was to be paid down in cash, two thousand dollars on the delivery of the deed, and the remaining twenty thousand dollars at the expiration of five years, or sooner if within that time the said McMahon should be placed in the quiet and peaceable possession and should have a good and sufficient deed of conveyance of the same, or what should be " legally equivalent thereto, from the party of the first part and the three trustees," describing them, which deed the plaintiff covenanted to procure and deliver, " and to take and use all legal and necessary steps and proceedings to obtain for said party of the second part, on his reasonable demand therefor." No provision is made for interest on the deferred payments.

The contract further provides that any and all sums which had been advanced by the defendants or either of them, on account of said contract, " or any other contract between said parties, or said parties Pedro Sanchez and Patrick McMahon, in relation to said rancho, or any other cause, shall be deemed and considered as advanced to said party of the first part, and shall bear interest at the rate of one and seven eighths per cent per month from this date, until a good and sufficient deed of conveyance as aforesaid, and the peaceable and actual possession of said premises ; " and that all moneys to be paid by McMahon for taxes or charges on the land prior to the execution of the deed and the delivery of the possession shall bear the same rate of interest; all of which advances and interest are to be deducted from the purchase money.

It was further provided that if the plaintiff should be living at the expiration of the five years, or on the delivery of the deed and possession of the premises, McMahon should pay her within one year thereafter an additional sum of two

thousand dollars; and that the conveyance should be free from all incumbrance done or suffered by the plaintiff.

This action was brought to set aside the above described conveyance, on the ground that it was procured by fraud. The plaintiff avers, that when she made her mark to the power of attorney she did not know or understand its contents, and that the defendant, Owen McMahon, and her son Pedro, falsely and fraudulently represented to her that it was an instrument to authorize said Pedro to settle up the mortgage which she owed to the defendants, by making over to them six hundred acres of the ranch, and to authorize the trustees to convey to them the said six hundred acres which she had previously agreed to sell them; that the power of attorney was not truly interpreted to her, and that its real purport was fraudulently concealed from her; that the consideration agreed to be paid by the defendants was grossly inadequate; and that she has received no part of said consideration.

The answer denies specifically all the allegations of fraud, or that the plaintiff was ignorant of the contents and legal effect of the power of attorney, or that it was falsely interpreted to her, or that the consideration was inadequate. It avers, on the contrary, that the plaintiff was fully competent to manage her affairs; that she was fully informed of and entirely comprehended the contents and legal effect of the power of attorney upon signing it; and they aver that they have paid to the plaintiff on account of the purchase money nine thousand eight hundred and ninety-nine dollars, including interest, in addition to two thousand dollars paid to her attorney, Pedro Sanchez, when the contract was signed.

On hearing the cause the Court entered a judgment to the effect that the power of attorney was fraudulent and void, and ordering it to be canceled, and that the contract made under the power of attorney was also fraudulent and void from the beginning; and that no estate, right, title, or interest passed thereby to the defendants, and ordering the written contract to be canceled.

There were no findings, nor any exceptions for want of

findings. But the defendants moved for a new trial, assigning as grounds: First—Alleged error of the Court in the admission of testimony. Second—That the defendants were misled and prevented from introducing further testimony on the question of value and adequacy of consideration by the announcement of the Judge at the trial that he was satisfied upon the question of value, whereby the defendants were prevented from having a fair trial. Third—That the judgment is inequitable and against the evidence. Fourth— That it is against law. Fifth—That the decision is against equity. Sixth—Insufficiency of the evidence to justify the decision. Seventh—Errors at law occurring at the trial. There is no specification in the statement wherein the evidence was insufficient to justify the decision, and this ground of the motion must therefore be disregarded; nor is there any specification under the head of errors in law occurring at the trial, unless the alleged errors in the admission of evidence are to be considered. After a careful examination of the transcript, we are unable to find any exception made by the defendants to the admission of evidence of the character indicated in the motion for new trial. If counsel rely upon errors in the transcript, they must point them out so that they can be identified, otherwise they must be disregarded.

If the question of the inadequacy of the consideration was a material element in this case, we would be inclined to reverse the judgment on the ground that the counsel for the defendants were surprised by the action of the Court in announcing that it was satisfied with the evidence already submitted on the question of value, and thereby inducing the defendants to offer no further proofs on that point, provided it appeared in a proper manner that the decision of the District Court was influenced by the inadequacy of the consideration, and that it decided the value of the land to exceed the estimate of the defendants' witnesses.

But the judgment is silent as to the value of the land, and there being no written opinion of the Judge, nor any

findings, we find nothing in the record indicating the action of the Court upon the question of value, except an affidavit of one of the defendants, which is annexed to the statement on the motion for new trial. In this affidavit, after reciting the facts in relation to the announcement of the Court that it was satisfied on the question of value, and that the defendants, for that reason, omitted to offer further evidence, it is said that the Court in announcing its decision stated that it decided the ranch to have been worth, at the date of the contract, seventy-five thousand dollars, which is about twenty-five thousand dollars more than the estimate of the defendants' witnesses.

It is not competent to establish, in this method, the action of the Court in respect to its decision on a question of fact. If a party desires to put upon the record the decision of the Court on matters of fact, he may request that written findings be filed, and if the Court refuses or fails to do it, the remedy is by exception and appeal. But *ex parte* affidavits cannot supply the want of findings. To tolerate such a practice would lead to endless perplexity and subvert the intent of the statute, which designates the findings as the method, and we may add the only method, by which the decision of the Court on a controverted question of fact can be made manifest. We must, therefore, disregard the affidavit of McMahon.

We are left, then, without any evidence in the record that the Court decided the value of the premises to exceed the estimate of the defendants' witnesses.

On the question of fraud, the evidence was conflicting. The plaintiff testifies distinctly that she was deceived in respect to the power of attorney, and did not understand its legal effect; and her son, Pedro Sanchez, testifies to all the circumstances of the fraud in their minute details.

But, aside from the direct testimony, the transaction on its face is so extraordinary as to induce a strong suspicion of unfair dealing. If the plaintiff had ordinary business ca-

29

pacity, it is almost incredible that she, a widow, far advanced in life, with a numerous family, should have voluntarily and knowingly placed the whole of her valuable estate at the disposal of a young son, only twenty-three years of age, of reckless and extravagant habits, and entirely unfitted for so responsible a trust. We have no reason to infer that the power of attorney was not truly and literally interpreted to her by the respectable attorney who acted as interpreter on the occasion; but we can well understand that an ignorant, unlettered woman, unable to read or write, may not have comprehended the terms or legal effect of a document containing the phraseology employed in such instruments. She doubtless comprehended enough of it to know that she was authorizing her son to close some transaction with McMahon about the ranch; but inasmuch as she had previously agreed to sell him six hundred acres and to cause the trustees to convey it to him, we see nothing improbable in her statement that she understood the power of attorney to refer solely to that transaction.

But the Court which tried the cause having adjudged the transaction to be fraudulent, and the testimony having been conflicting, we cannot disturb the judgment on the ground that it is contrary to the evidence, even if there had been the proper specification in the statement on the motion for new trial.

But it is claimed that the judgment is erroneous in one particular, even if it be conceded to be correct on the main proposition. The defendants claim that, inasmuch as they paid certain moneys under the contract, the judgment should have ordered these sums to be refunded. When a contract is rescinded by the decree of a Court of equity, the rule is as stated by the counsel. But in this case there is no rescission of the contract. The judgment is that the agreement was void *ab initio,* and "that no estate, claim, right, title, or interest whatsoever," ever passed from the plaintiff to the defendants. A complete answer to this objection to the judgment is also to be found in the fact that no money was paid to the

Points decided.

plaintiff under the contract.   It appears that two thousand dollars was paid to Pedro Sanchez when the contract was signed, out of which he paid four hundred and twenty dollars to Lloyd, the attorney in the transaction, for fees due to him, and he appropriated the remainder of it to his own use. It is true, he says, in referring to the disposition made of this money, "I paid one debt for my mother, and others for me." But he does not specify the amount of the debt paid for his mother, and, for aught that appears, it may not have exceeded five dollars.   On the proofs, it was impossible to decide what amount, if any, he paid for his mother; and if the defendants intended to insist upon having that amount refunded, it was incumbent on them to establish the amount by proofs.   Having failed to do this, they cannot complain that the judgment omits to give the relief claimed.   It is plain they are not entitled to recover from the plaintiff the two thousand dollars paid to Pedro, and which he squandered for his own purposes.   Having paid this sum to their confederate in the fraud, they must look to him, if to any one, for the money.

Judgment affirmed.